UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCELLA DOROTHY SIMONSON,

       Plaintiff,                                  Case No. 2:14-cv-71

v.                                                      HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

In February 2011, Plaintiff Marcella Dorothy Simonson filed an application for social security benefits. See Transcript of Administrative Hearing at pages 129-132 (hereinafter Tr. at \_\_\_). Plaintiff alleges that she became disabled due to recurrent hernias and post surgical complications and due to an anxiety disorder. Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). Tr. at 25-71. ALJ Thomas W. Springer, held a hearing on October 23, 2012. The ALJ denied Plaintiff's claim on December 4, 2012. Tr. at 11-21. The Appeals Council denied Plaintiff's request for review on January 23, 2014. Plaintiff then filed this action.[1]

At the hearing, Plaintiff was represented by attorney Gabriel Cameron. Plaintiff and vocational expert David Ostwald testified. Plaintiff testified that she lives with her husband and three children, ages twelve, four and a seven-day-old newborn. Tr. at 31. Plaintiff testified she weighed 300 pounds and that she gained weight as a result of having hernias. Tr. at 32. Plaintiff has a twelfth

---

[1]Both parties consented to proceed before a Magistrate Judge on June 3, 2014.

grade education. Tr. at 33.  Plaintiff stated that she last worked in 2008, but had to stop working due to the pain associated with her hernias.  Tr. at 36.  Plaintiff stated that she was unable to lift anything, including her newborn son.  Tr. at 36-37.  Plaintiff has experienced pain and a burning sensation in her abdomen since 2008.  Tr. at 42.   Plaintiff gained weight as a side effect of the hernias, because the hernias keep her "from doing pretty much a lot of stuff."  Tr. at 43.  Plaintiff testified that she likes being home and does not like to be around a lot of people.  Tr. at 46.  She sleeps four to five hours in a night and wakes up several times.  *Id.*  Plaintiff took care of the kids when her husband was not home, but received help from her twelve year old child.  Tr. at 48.  Plaintiff took Prozac and Xanax for depression and anxiety.  *Id.*  Plaintiff could walk two city blocks.  Tr. at 49.  She could be on her feet for about 30-45 minutes before she would need to lay down.  *Id.*  She could sit for about 45 minutes before she would have to get up.  Tr. at 50.  Plaintiff stated that she could lift five to ten pounds before her pregnancy.  *Id.*  She stated that her hands have been numb for months.  *Id.*  Plaintiff uses a walker as a result of her most recent hernia surgery.  Tr. at 51-52.  Plaintiff can drive, make simple meals and wash dishes while sitting.  Tr. at 55.  Plaintiff dusts her home, but does no vacuuming, sweeping or mopping.  *Id.*  Plaintiff stated that she had the open wound in her stomach since November 2009.  Tr. at 59.

Plaintiff's first attempt to repair a hernia was in February 2009.  *Id.*  Dr. Campbell repaired the hernia with mesh during a surgery at the St. Francis Hospital in Escanaba, Michigan. Tr. at 219-220.  In June, Dr. Campbell discovered that Plaintiff had an abdominal wall hernia.  Tr. at 223. By September 2009, Plaintiff was admitted to the hospital for a recurrent ventral incision hernia.  Tr. at 226-227.  In November 2009, plaintiff returned to the hospital because her hernia wound was infected.  Tr. at 229.  Dr. Campbell surgically removed the infective mesh.  Tr. at 233.

When Plaintiff returned to the hospital in March 2010, a CT scan revealed a hernia repair, and also a small hernia in the left lower abdomen containing a bowel loop. Tr. at 240.

Just before the hearing, on the day she gave birth, Dr. Edwards operated on Plaintiff by reconstructing her abdominal wall with biologic mesh. Dr. Edwards described the procedure as an extremely complicated surgery. Tr. at 340. After surgery, Plaintiff again began to experience complications including drainage and bacteria at the incision. *Id.* Plaintiff was taken back to surgery to treat the wound with antibiotics and a simple dressing. *Id.* The tissue never healed and an additional surgery, post hearing, was required. *Id.* Dr. Edwards again opened the abdominal wall for a more aggressive debridement of all subcutaneous fistula tracts. Tr. at 340-341. Dr. Edwards noted on February 7, 2013, that plaintiff continues to have significant difficulties and chronic problems which affect her normal activities. *Id.* He further opined that plaintiff may need more surgery in the future. *Id.*

In January 2011, plaintiff complained of depression and feeling anxious, tearfulness without reason, decreased interest in activities, and trouble sleeping. Tr. at 267. Plaintiff was placed on Celexa, but did not wish to pursue counseling. *Id.* In March 2011, Plaintiff began taking Paxil to treat her anxiety attacks. Tr. at 264. On June 27, 2011, Plaintiff was examined by psychologist Barbra Halazon, at the request of the Michigan Disability Determination Service. Tr. at 283. Plaintiff indicated that she had trouble sleeping and made her son sleep in her room, because of fear for his safety. *Id.* Plaintiff thinks about her other son and father who both died, and these thoughts cause her anxiety. *Id.* She thinks and fears that she is going to die. *Id.* She reported that she did not socialize or leave her house very often, because of her stomach pain. Tr. at 284. Plaintiff stated that all she does is watch television. Tr. at 286. Dr. Halazon diagnosed Plaintiff with a generalized anxiety disorder with panic attacks and GAF of 48. Tr. at 289. Plaintiff's prognosis was guarded.

3

*Id.* As of April 27, 2012 , Plaintiff continued treatment of anxiety with Dr. Randall and was treated with Prozac during her pregnancy. Tr. 294-295.

Vocational expert David Ostwald testified at the hearing. The vocational expert indicated that Plaintiff could not perform her past jobs. However, the vocational expert testified that there were jobs in the economy with limitations that included lifting up to twenty pounds occasionally and ten pounds frequently, standing, walking and sitting for six hours in an eight hour day, no climbing ropes, ladders or scaffolding, but occasionally climbing ramps or stairs, crouching, kneeling and crawling, with avoidance of more than occasional exposure to extreme heat, humidity and hazards, and limited to two to three routine step tasks that allow being off task up to ten percent of the work day in addition to regularly scheduled breaks, and work that does not require too much public contact. Tr. at 68. The vocational expert concluded that there exists jobs in the economy that such an individual could perform such as machine tending with 1000-1500 jobs primarily in an office setting, weighers and measurer positions with 500 jobs, and production work such as assemblers with approximately 4000-5000 jobs in the State of Michigan. Tr. at 69. If that individual is limited to sedentary work, there are approximately 200-500 inspector/tester positions, and approximately 1000-1500 assembler positions. If the combination of physical and mental impairments limited that individual unable to sustain work activity on a regular basis for eight hours per day, five days a week there exists no positions in the economy. Tr. at 69-70.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also

supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). The ALJ found that Plaintiff had severe impairments of obesity, recurrent hernias, anxiety and depression. The ALJ rejected Plaintiff's attorney's argument that she met listing 8.04 which addressed chronic infections of the skin or mucus membranes with extensive fungating or extensive ulcerating skin lesions that persist for at least three months despite continued treatment. The ALJ found that hernias were covered under listing 5.0, et seq., and that there was no medical record to support a conclusion that Plaintiff's hernias were caused by infection. The ALJ found no evidence to support Plaintiff's complaints of severe pain and noted that Plaintiff's recent hernia problem occurred during her pregnancy which would have "exacerbated the situation by the added stress to the abdomen." Tr. at 15. Further, the ALJ noted that Plaintiff did not testify that she was experiencing post operative complications or that the hernia site continued to drain after her recent surgery. *Id.* The ALJ felt that Plaintiff's weight and pregnancy were contributing to her ongoing problems and that her ability to manage a household with young children indicated that she could perform at least light duty work. Further, the ALJ found that Plaintiff did not meet any listing for her claims of mental impairment. Tr. at 15-16. The ALJ noted that Plaintiff's pregnancy limited her ability to take her prior medications and some of her medications were changed which would account for some of her anxiety. Tr. at 16.

The ALJ concluded that Plaintiff's pain and obesity limited her to light work where she could occasionally lift twenty pounds and frequently lift ten pounds, stand, walk and sit for six hours out of the eight hour work day, occasionally climb ramps and stairs, stoop, crouch, kneel and crawl, but could not climb ropes, ladders or scaffolding. In addition, the position should allow Plaintiff the limitation of only two to three step tasks that allow for a ten percent off task accommodation, is not fast paced production, and provides few work place changes and no more than occasional interaction with the public. Tr. at 17. The ALJ found that some of Plaintiff's current limitations were due to the recovery process of her most recent surgery and stated "there is no support in the medical record claimant will be laid up to this extent for a full year." Tr. at 18.

Plaintiff argues that the ALJ erred by concluding the Plaintiff's ailments would not last for a full year, and the ALJ lacked substantial evidence to support his finding that Plaintiff was not disabled. The Commissioner argues that the ALJ's decision is supported by substantial evidence because no treating physician ever stated that Plaintiff could not work or perform work activities for a prolonged period of time.

The decision of the ALJ is not supported by substantial evidence. The finding that Plaintiff's hernias and complications associated with the hernias would not last for more than twelve months is clearly contradicted by the record. Plaintiff had ongoing hernias and multiple surgeries that failed to correct her ailments for well over twelve months. The ALJ seemed to suggest that some of Plaintiff's problems were due to her recent pregnancy. However, there is no medical evidence or medical opinion that indicated that Plaintiff's hernia issues would resolve after her full recovery from her pregnancy. In fact, as Plaintiff points out, her hernia issues did not resolve post pregnancy and another surgery had to be performed in 2013. The ALJ did not have the benefit of knowing that the surgery which was performed only seven days before the hearing would not resolve Plaintiff's hernia

6

problems. The ALJ made conclusions that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. These conclusions came from a Residual Functional Capacity Assessment. Tr. at 78-79. More importantly, that conclusion is contradicted in the record. Plaintiff stated at the hearing that she could only lift five to ten pounds before her pregnancy, and that she was unable to lift her newborn son. She further stated that she could only perform very limited household chores, such as washing dishes while sitting and that her twelve year son helped her with more difficult chores or they were left for her husband. While Plaintiff did sometimes go grocery shopping, she indicated that she either waited on a bench for her husband to do the shopping, or she sat in an electric cart while shopping.

>Pursuant to 42 U.S.C. § 405(g), sentence four states:
>
>The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Sentence six states in relevant part:

>The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

The three requirements for a sentence six remand are: (1) that the evidence is new, (2) that the evidence is material, and (3) that good cause is shown why the evidence was not submitted to the ALJ. *Gillaspy*, 178 Soc. Sec. Rep. Serv. at *5. These requirements are fully explained in *Foster v. Halter*:

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 110 L.E.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The Sixth Circuit has used a strict test for the "good cause" requirement in that "[t]he claimant must give a valid reason for failing to obtain relevant examinations prior to the hearing." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

Plaintiff has presented new evidence from Dr. Edwards regarding a post hearing surgery procedure that was required. Tr. at 340-345. The good cause requirement is shown because the evidence is new and was clearly unavailable at the time of the hearing. Moreover, the ALJ did conclude that Plaintiff had not shown that her hernia complications were likely to continue and that her recent surgery was likely to resolve her issues. Moreover, the ALJ attributed Plaintiff's problems in part to her pregnancy and her obesity. Evidence is "material" for a sentence six remand only if the Commissioner reasonably could have decided the disability claim differently with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Dr. Edwards noted that Plaintiff's procedure was highly complex and that additional surgeries may be required. Dr. Edwards stated in part:

> She has had significant difficulty from all of these surgeries, as they were quite large, and she continues to have chronic problems which affect her ability to do some of her normal activities.
>
> Also of note, she had chronic pain in her previous hernia repair site prior to the complex abdominal wall repair. This apparently was affecting her ability to do her job and function normally. At the time

8

> of surgery, I did find some residual retained mesh in the right lower abdomen, it was balled up like a golf ball, was very fibrotic, and I think that is where she was probably having her chronic discomfort. During her abdominal wall reconstruction, I did remove the old mesh.
>
> I see Ms. Simonson in the office every 1-2 weeks to help manage her wound, and she certainly is not out of the woods yet for another operation. I hope the wound vac will take care of her current problem, and if it does, the only reason she would require any further surgical intervention would be for a recurrent hernia.

Tr. at 341. The post hearing evidence is material evidence that should be considered on remand.

Accordingly, this case will be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for further consideration.

 /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: March 19, 2015